UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | |
| BRENDA KATE STEWART-HARREL ) | CASE NO. A10-77244-WLH |
| ) | JUDGE: HAGENAU |
|     Debtors ) | |
| ) | Contested Matter |
| Nancy J. Whaley ) | |
|     Trustee ) | |
|   vs. ) | |
| BRENDA KATE STEWART-HARREL ) | |
| ) | |
|     Respondent ) | |

### CHAPTER 13 TRUSTEE'S BRIEF IN OPPOSITION TO CONFIRMATION OF CHAPTER 13 PLAN

### STATEMENT OF JURISDICTION

Jurisdiction is appropriate pursuant to 28 U.S.C. §1334, 28 U.S.C. §151 and 11 U.S.C. §105. Venue is proper pursuant to 28 U.S.C. §1408 and §1409. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(L).

### QUESTIONS PRESENTED

Does a Chapter 13 extension plan meet the requirements of 11 U.S.C § 1325(a)(3) and 11 U.S.C. §1325(b)(1) if the Debtor does not propose to pay all available net monthly income to creditors?

### STATEMENT OF FACTS

The Debtor filed her voluntary petition under Chapter 13 on June 11, 2010. The amended Chapter 13 Plan filed on August 24, 2010 provides for a monthly payment to creditors of $1,157.00 per month and a 100% dividend to unsecured creditors.

The plan proposes to fund attorney fees, priority taxes, a secured car claim and general unsecured creditors. Pursuant to the proposed plan, the Debtor will make payments to the Trustee for Robert J. Semrad and Associates for attorney fees. The total fee of $3,000.00 will be paid upon confirmation of the plan or dismissal or conversion of the case.

The plan proposes to fund an anticipated claim of Wachovia Dealer Services secured by a 2006 Hummer H3[1] at a value of $20,640.00, at 4.25% interest, with adequate protection payments of $50 per month, increasing to $1,076 per month beginning in March 2011. Wachovia Dealer Services has not yet filed a proof of claim. The claim of Wachovia Dealer Services will be paid in full in month 21 of the plan (June 2012).

Once the vehicle and attorney fees are paid in full, the Debtor's plan proposes to fund a priority tax claim in the amount of $5,733.67 filed by the Internal Revenue Service. Based on the proposed plan, the IRS will begin receiving payments on their priority claim in month 22 of the plan (July 2012) and will be paid in full in month 27 (December 2012).

After all secured and priority claims have been paid, the Debtor proposes to pay her general unsecured creditors in full. The Debtor scheduled general unsecured debts in the amount of $27,648.22. To date, general unsecured creditors have filed claims totaling $22,867.11. The last date to file claims is October 20, 2010 for non-governmental creditors. Based on the Debtor's proposed plan, general unsecured creditors will begin receiving payments in month 27 of the plan (December 2012). As proposed, the Chapter 13 plan will last approximately 51 months in total.

The Debtor's amended Schedule I (filed August 24, 2010) shows that the Debtor is employed with Newton County School System and makes gross monthly income of $4,541.57.

---

[1] The Debtor's plan and schedules show that the Debtor has an interest in a 2002 Hummer H3; however, the claim filed by Wachovia in debtor's previous case, 10-63280, shows that the collateral for the loan is a 2006 Hummer H3. In that case, Wachovia Dealer Services filed a claim in the amount of $20,640.06.

After payroll deductions for income taxes, insurance and her retirement contributions, the Debtor has income of $3,188.87 per month. Pursuant to the Debtor's Schedules, she is widowed with no dependents. The Debtor testified at the section 341 Meeting of Creditors that she lives with relatives and does not pay for rent or utilities. On Schedule J, the Debtor claimed monthly living expenses for food, auto insurance, transportation, medical expenses, laundry, clothing, and personal grooming totaling $533.00 per month. The Debtor's available net income according to her amended Schedule J is $2,655.87 per month. The Debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C) shows that the Debtor has monthly disposable income under §1325(b)(2) of $821.04 on line 59.

On August 2, 2010, the Chapter 13 Trustee filed Objections to the Confirmation of the Plan and a Request for Dismissal of the Case. The Trustee objected to the plan pursuant to 11 U.S.C. §1325(a)(3) based on the Debtor's proposal to pay only $1,157.00 per month to creditors, while her Schedule J indicates that she has the ability to pay $2,839.00[2] per month.

The hearing on Confirmation of the Debtor's plan came before the Court on September 1, 2010, at which time the Court requested briefs on the issue of whether the plan was proposed in good faith and complied with 11 U.S.C. §§1325(a)(3) and (b)(1).

## ARGUMENT

**I.     A Chapter 13 extension plan is not proposed in good faith as required by 11 U.S.C. § 1325(a)(3) if the Debtor fails to pay all of her available net monthly income to creditors, so that the creditors can be paid as soon as possible.**

To be confirmed a Chapter 13 Plan must meet all of the requirements of 11 U.S.C. § 1325. *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens), 702 F.2d 885 (11th Cir. 1983)*702 F.2d 885, 887 (11th Cir. 1983). One of the requirements for confirmation of a plan is

---

[2] The Debtor amended her Schedules I and J on August 24, 2010 to increase her expenses from $350 per month to $533 per month.

- 3 -

that it must be proposed in good faith, which requires the Court to consider the totality of the circumstances of the Debtor's plan. *See e.g. In re Kitchens; In re Estus,* 695 F.2d 311 (8th Cir. 1982). 11 U.S.C. §1325(a)(3) states that the Court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law."

In *Kitchens*, the Court rejects the idea that a plan can be "per se" proposed in good faith. *In re Kitchens*, 702 F.2d at 888. The court also rejects the idea that good faith can be determined merely by analyzing whether a Debtor's plan proposes a "meaningful or substantial repayment[3]" to creditors, or whether it meets the "best interest" test under 11 U.S.C. §1325(a)(4), which requires that unsecured creditors receive as much as they would under a Chapter 7 liquidation. *Id.*

According to the 11th Circuit Court of Appeals, the facts of each Bankruptcy case must be analyzed according to certain criteria in order to determine whether a plan has been proposed in good faith pursuant to 11 U.S.C. §1325(a)(3). The Eleventh Circuit has identified a list of factors that a Court must consider when determining whether a plan has been filed in good faith: the amount of the debtor's income from all sources; the living expenses of the debtor and his dependents; the amount of attorney's fees; the probability or expected duration of the debtor's Chapter 13 plan; the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; the debtor's degree of effort; the debtors ability to earn and likelihood of fluctuation on his earnings; special circumstances such as inordinate medical expense; the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; the burden which the plan's administration would place on the trustee. *Id* at 888-889. The Debtor has the burden of

---

[3] See *In re Heard*, 6 B.R. 876 (Bankr. W.D.Ky. 1980) for a discussion of this approach.

- 4 -

proving that her plan was filed in good faith. *In re Gibson*, 45 B.R. 783, (Bankr. N.D.Ga. 1985) at 786.

In the present case, the Chapter 13 Trustee objected to confirmation of the Debtor's plan based on the fact that the Debtor is proposing to pay less than she has the ability to pay her creditors, which will result in a significant delay in payments to creditors. The Trustee argued that the plan is not proposed in good faith despite the fact that the Debtor is proposing to pay unsecured creditors a 100% dividend. According to *Kitchens*, the Court should analyze the facts of each case, beyond the amount that is being paid to creditors, in order to make a finding of good faith. Specifically, the Trustee requests that the Court review the following factors as identified by the 11th Circuit to determine whether the plan has been proposed in good faith: the amount of the Debtor's income, the living expenses of the Debtor, the probability or expected duration of the debtor's Chapter 13 plan, and the debtor's degree of effort. The Chapter 13 Trustee acknowledges that the Debtor is proposing to pay unsecured creditors in full; however, the timing and the delay of these payments demonstrates the Debtor's lack of effort to reorganize. *Id* at 889.

According to Debtor's filed pay advices and Schedule I, she earns $56,040.00 annually as a teacher with Newton County. She does not list any dependents. Her income is above the median income for a household of one in Georgia, which was $40,546.00 at the time of the filing of her petition. Additionally, the Debtor lives rent-free with relatives per her testimony at her Section 341 Meeting of Creditors. She has minimal living expenses of $533.00 per month according to her amended Schedule J. After her living expenses, she has $2,655.87 left over each month. Nevertheless, the Debtor proposes a plan payment of only $1,157.00 per month. As a result, the Debtor has excess funds of $1,498.87 each month. The Trustee acknowledges

that the Debtor's living expenses are meager on the Schedule J; however, the Debtor has failed to show the Court why she needs an additional $1,498.87 per month, while delaying payments to her general unsecured creditors. It appears that the Debtor is not making her best effort to fund this plan. Furthermore, it is not clear why the Debtor needs Bankruptcy protection based upon her income and expenses since the purpose of a Chapter 13 plan is to reorganize.

Even though the Debtor proposes to pay her unsecured creditors in full, the Court should consider the fact that creditors lose money from the delay in payments. If the Debtor paid all of her net monthly income to creditors ($2,655.87), then all creditors would be paid in full in 22 months instead of 51 months. The Debtor has not proposed to pay interest to the unsecured creditors to compensate them for the delayed payments. If the plan is confirmed as proposed, the Debtor will be able to save a total of $76,442.37 over the 51 months that she receives bankruptcy protection, while her unsecured creditors will have to wait 51 months to be paid, with any interest owed to them discharged at the conclusion of the case. Furthermore, the Debtor is shifting all of the risk of success or failure of the plan to creditors, since she is retaining money that could be used to pay creditors sooner.

The plan also shows a lack of good faith based on the fact that the Debtor proposes to make payments to Wachovia for the 2006 Hummer H3 in the amount of $1,076.00 per month (beginning in March 2011), whereas the contract payments are only $613.52 per month[4]. Therefore, the Debtor is attempting to accelerate the payments on her secured debt to the detriment of the unsecured creditors. In a plan where the Debtor has enough money to pay all creditors, this is evidence of a lack of good faith. *In re Pearson*, 393 B.R. 97 (Bankr.M.D. Ga 97). The remedy to this is that the Debtor should be required to amend her plan to fund the

---

[4] According to the Retail Installment Sale Contract attached to the proof of claim filed by Wachovia Dealer Services in the Debtor's previous case, 10-63280 (claim 6-1), the Debtor financed $29,022.63 at 14.99% interest for 72 months.

unsecured creditors concurrently with the secured creditors and attorney fees. In the alternative, the Debtor could provide for interest or a present value component to be paid to the unsecured creditors. This will insure that the risk of default under the Plan is shared by both the Debtor and all creditors.

The Court should deny Confirmation of Debtor's plan based upon an analysis of the totality of the circumstances and the specific elements of good faith as outlined by the 11th Circuit Court of Appeals in *In re Kitchens.* 702 F.2d at 888. Specifically, the Debtor's income, the living expenses of the Debtor, the probability or expected duration of the debtor's Chapter 13 plan, and the debtor's degree of effort all indicate that the Debtor's plan has not been proposed in good faith.

**II.    The Debtor's plan violates 11 U.S.C. §1325(b)(1) in that the plan does not pay the Debtor's projected disposable income to general unsecured creditors concurrently with other creditors or propose to pay present value to unsecured creditors.**

The Debtors' plan also violates 11 U.S.C. §§ 1325(b)(1). Section 1325(b)(1) states :

> If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the Court may not approve the plan unless, as of the effective date of the plan-
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Since the Chapter 13 Trustee has objected, the Court should not confirm the plan because the plan does not comply with the requirement that "projected disposable income to be received in the applicable commitment period *beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors* under the plan (emphasis

- 7 -

added). This plan violates § 1325(b)(1)(B) by paying the unsecured creditors after attorney fees, secured and priority creditors, rather than "beginning on the date that the first payment is due under the plan."

The Official Form 22C shows that the Debtor has disposable income of $821.04 on line 59 [5], which should be paid to the unsecured creditors on the date that the first payment is due under the Plan. While debtors in the Northern District of Georgia often delay payments to general unsecured creditors, this is done as a matter of necessity: many debtors are only able to make plan payments in an amount sufficient to provide adequate protection to secured creditors. Nevertheless, if the Trustee or an unsecured creditor objects, then the Court should not confirm the plan pursuant to the provisions of 11 U.S.C. § 1325(B)(1)(b). This Debtor has the ability to pay the unsecured creditors concurrently with the secured creditors according to her schedules.

Debtor may argue that because her plan complies with 11 U.S.C. §1325(b)(1)(A) by proposing to pay all creditors in full, she does not have to meet the requirements of 11 U.S.C. §1325(b)(1)(B). The Trustee acknowledges that if a Debtor does indeed meet the requirements of §1325(b)(1)(A), then the Debtor is not required to meet the provisions of §1325(b)(1)(B) based on the general rules of statutory interpretation where clauses are separated by the word "or." The Trustee, however, disagrees that the Debtor has complied with 11 U.S.C. § 1325(b)(1)(A) because the Debtor is not proposing to pay interest to her unsecured creditors.

Typically, interest stops accruing once a Debtor files bankruptcy[6]. *Beguelin v. Volcano Vision* (*In re Beguelin*), 220 B.R. 94, 98 (Bankr. 9th Cir. 1998). Nevertheless, post-petition

---

[5] 11 U.S.C. section 1325(b)(2) defines disposable income. While disposable income is usually the same as "projected disposable income", the United States Supreme Court held that projected disposable income may differ from disposable income where the Court is aware of foreseeable changes in income and expenses at the time of confirmation. In re Lanning, 130 S. Ct. 2464 (1989).

[6] See 11 U.S.C. § 502(b), which generally disallows claims for unmatured interest.

interest may be granted in cases where the Debtor is actually solvent. *In re Walsh Construction*, 669 F.2nd 1325 at 1329 (9th Cir. 1982). In a Chapter 13 case where a Debtor is found to be solvent[7], a Bankruptcy Court may require a Debtor to pay post-petition interest to unsecured creditors in order to comply with 11 U.S.C. §1325(b)(1) unless the Debtor's plan proposes to pay all projected disposable income until unsecured creditors are paid in full. *In re Weiss*, 251 B.R. 453 (Bankr. E. Distr. Penn 2000) at 463-64. In the *Weiss* case, the Court ruled that a plan could not be confirmed where a solvent debtor paid less that his projected disposable income to his unsecured creditors and did not propose interest to these creditors. *Id* at 464.

Courts following this interpretation of §1325(b)(1) have held that the phrase "as of the effective date of the plan, the value of the property to be distributed…" means that the Debtor must pay present value to unsecured creditors. *In re Rhein*, 73 B.R. 285 at 287 (Bankr. E.D. Mich. 1987) (citing *In re Hardy*, 755 F.2d 75 (6th Cir 1985) ). Courts have long interpreted the phrase "as of the effective date of the plan" as requiring the payment of present value to creditors with regards to other sections of the Bankruptcy Code including §§ 1325(a)(4), 1325(a)(5), and sections under Chapter 11. *In re Rhein, 73 B.R. 285* at 287 (citing *In re Architectual Design, Inc.*, 59 B.R. 1019, 1021 (W.D. Va. 1986). The simplest way to calculate present value is to pay interest payments in order to compensate for delayed payments. *Id*. Since §1325(b)(1)(A) references the "value of the property" and "as of the effective date of the plan," debtors must pay present value to all creditors, including the unsecured creditors. The Court in *In re Rhein* found that a Debtor who proposed to save $147.00 per month and who did not propose to pay interest to her unsecured creditors failed to meet the requirements of §1325(b)(1).

---

[7] "Solvent" is not a defined term in the Bankruptcy Code. Merriam-Webster's dictionary defines solvent as "able to pay all legal debts." The term "insolvent" is defined under 11 U.S.C. §101(32).

The Debtor in this case has substantially greater income than her monthly expenses pursuant to Schedule I and J.  Her monthly income after payroll deductions is $3,188.87, while her monthly expenses are $533.00. Her available net monthly income on Schedule J is $2,839.00.  Based on these facts, it appears that the Debtor is solvent because she has enough money available to pay all of her debts.  Since the Debtor is not proposing to pay present value to her unsecured creditors, she has failed to meet the requirement under 11 U.S.C. §1325(b)(1)(A). The Court should deny confirmation of the plan unless the Debtor amends the plan to pay present value to her unsecured creditors or pays all projected disposable income to her unsecured creditors concurrently with other creditors.

## **CONCLUSION**

The Debtor is proposing a plan that delays payments to creditors unnecessarily by over two years (29 months), while proposing that the Debtor retain a windfall of $1,498.87 each month. Based on the income and expenses of the debtor and the length of the plan, the plan is not proposed in good faith. The Debtor is not proposing a plan that represents her best efforts to pay her creditors because the plan shifts all risk to the creditors.  Furthermore, the Debtor has failed to meet the requirements of 11 U.S.C. §§1325(b)(1)(A) or (b)(1)(B) in that the plan fails to either pay present value to unsecured creditors or pay all projected disposable income to the unsecured creditors. As a result, the Trustee respectfully requests that the Court deny confirmation of the Plan and dismiss the case unless the Debtor amends the plan as stated above, and any other relief that the Court deems appropriate.

This the 1st Day of October, 2010

Respectfully submitted,

/s/_____
Nancy J. Whaley
Standing Chapter 13 Trustee
State Bar number 377941
303 Peachtree Center Avenue
 Suite 120
Atlanta, GA 30303
(678) 992-1201

 /s/_____
Melissa J. Davey
Attorney for the Standing Chapter 13 Trustee
State Bar Number 206310
303 Peachtree Center Ave,
Suite 120
Atlanta, GA  30303
(678) 992-1201

- 11 -

## CERTIFICATE OF SERVICE

This is to certify that I have this day served:

Debtor:
Brenda Kate Stewart-Harrel
80 Montgomery Court
Covington, GA 30016

Attorney for Debtors:
Robert Semrad & Associates LLC
Suite 3600
101 Marietta Street NW
Atlanta, GA 30303

with a copy of the foregoing Trustee's Brief in Opposition to Confirmation of Chapter 13 Plan by depositing in the United States Mail a copy of same in a properly addressed envelope with adequate postage thereon.

THIS THE 1st day of October, 2010

/s/_____
Melissa J. Davey
Attorney for the Chapter 13 Trustee
State Bar Number 206310
303 Peachtree Center Ave., NE
Suite 120
Atlanta, GA  30303
(678) 992-1201